IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

MITCHELL KAHLE and KEVIN )          CIVIL NO. 10-00764 LEK-KSC
HUGHES,                  )
                         )
          Plaintiffs,    )
                         )
     vs.                 )
                         )
BIENVENIDO VILLAFLOR, ET AL., )
                         )
          Defendants.    )
_____ )

**ORDER GRANTING IN PART AND DENYING IN PART THE
STATE DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

On September 21, 2011, Defendant the State of Hawai`i

("the State"), Defendants Bienvenido Villaflor,

Freddie Carabbacan, and Daniel Kwon - in their official

capacities only, Defendants Douglas Arakaki, Raymond A. Schwartz,

Betty Muraki, Daryl Naauao, and Jayson M. Watts - each in his or

her individual and official capacities, and Defendants Paul Reid

and Reid Ogata - in their individual capacities only[1]

(collectively "the State Defendants"), filed the instant Motion

for Judgment on the Pleadings ("Motion").  Plaintiffs

_____

[1] It is not clear in what capacity Plaintiffs have sued
Defendant Reid and Defendant Ogata.  The caption of the First
Amended Complaint lists those defendants "in his individual and
personal capacities", [First Amended Complaint at pg. 1,] but the
text of the First Amended Complaint states that each is "sued
herein in both his individual and his official capacities" [id.
at ¶¶ 7, 13].  Defendants Reid and Ogata answered the First
Amended Complaint in their individual and official capacities.
[Answer to Plaintiffs' First Amended Complaint, filed 3/17/11
(dkt. no. 32), at 2.]

Mitchell Kahle and Kevin Hughes ("Plaintiffs") filed their memorandum in opposition on December 23, 2011, and the State Defendants filed their reply on January 3, 2012.  In addition, Defendant Villaflor, in his individual capacity, and Defendant Kwon, in his individual capacity, each filed a joinder in the Motion on January 10, 2012 and January 12, 2012, respectively. *Amicus Curiae* the American Civil Liberties Union of Hawaii Foundation filed a brief in support of Plaintiffs' opposition to the Motion on January 9, 2012.

The Motion and the joinders came on for hearing on January 17, 2012.  John Cregor, Jr., Esq., appeared on behalf of the State Defendants; Dennis Ferm, Esq., appeared on behalf of Defendant Villaflor, in his individual capacity, Mark Nomura, Esq., appeared on behalf of Defendant Kwon, in his individual capacity, Henry Kim, Esq., appeared on behalf of Defendant Carabbacan, in his individual capacity, and James Bickerton, Esq., and Stephanie Marn, Esq., appeared on behalf of Plaintiffs. After careful consideration of the Motion, supporting and opposing memoranda, and the arguments of counsel, the joinders are HEREBY GRANTED and the Motion is HEREBY GRANTED IN PART AND DENIED IN PART for the reasons set forth below.

## BACKGROUND

On February 15, 2011, Plaintiffs filed their First Amended Complaint for Declaratory and Injunctive Relief and

2

Compensatory and Punitive Damages ("First Amended Complaint"). [Dkt. no. 20.]

According to the First Amended Complaint, Kahle is a well-known civil rights activist who founded the Hawaii Citizens for the Separation of State and Church ("HCSSC").  In particular, he has for many years objected to religious opening prayers at the Hawai`i State Legislature on the grounds that they violate the First Amendment.  [First Amended Complaint at ¶ 20.]

On April 27, 2010, Kahle sent an email on behalf of HCSSC to all members of the Hawai`i State Senate ("the Senate") and the Hawai`i State House of Representatives ("the House"), including Senate President Colleen Hanabusa and Speaker of the House Calvin Say warning that "Christian Prayer, Sermonizing, and Proselytizing" must stop.  [Id. at ¶ 21.]  The next day, Kahle sent two emails to the same persons addressing the same topic. [Id. at ¶¶ 22-23.]  On April 29, 2010, the last day of the 2010 legislative session, Kahle sent them another email stating, *inter alia*, that HCSSC members "will engage in unannounced peaceful acts of civil disobedience if the Senate or House begin today's sessions with unconstitutional Christian prayers, sermonizing, singing, or proselytizing."  [Id. at ¶ 24.]

Plaintiffs and Kahle's wife, Holly Huber, who is also an HCSSC member, attended the Senate's final session.  Hughes agreed to film the session using Kahle's video camera.  Kahle

3

intended to post footage of the Senate's invocation on HCSSC's
website, which posts extensive news content regarding the
separation of church and state in Hawai`i.  Plaintiffs allege
that, prior to the start of the session, various Defendants and
Doe Defendants met to discuss the HCSSC protest and to give
instructions about the protest.  [Id. at ¶¶ 25-26.]  Prior to the
session, Plaintiffs went to the Office of Public Safety ("OPS")
and informed Lieutenant Naauao, an OPS employee who was in charge
of the Deputy Sheriffs at the Capitol, and informed him about
their intent to engage in "a 'peaceful act of civil disobedience'
by 'objecting'" to any religious prayer or invocation.  [Id. at ¶
27.]  Kahle also informed Naauao that they would be recording the
invocation.  Naauao responded that the deputies "'would remain
neutral in the matter' as they had on previous occasions."  [Id.
at ¶ 28.]

        Kahle sat in the gallery of the Senate Chambers, and
Villaflor, the Senate Sergeant-at-Arms, positioned himself close-
by prior to the start of the session.  Kahle also noticed there
were Deputy Sheriffs inside the chambers.  After Senate President
Hanabusa called the Senate to order, she introduced Reverend
Dr. David Hockney from the Olivet Baptist Church ("Reverend
Hockney") to deliver the invocation.  Senate President Hanabusa
asked the audience to rise.  Reverend Hockney asked everyone to
bow their heads in prayer.  [Id. at ¶¶ 29-32.]

4

Reverend Hockney began by saying, "'Father, we thank you . . . .'" [Id. at ¶ 32.]  Kahle then stood and "spoke in a calm voice, audible to those in attendance, 'I object, my name is Mitch Kahle, and I object to this prayer on the grounds that it violates my First Amendment rights . . . .'" [Id. at ¶ 33.] Kahle immediately sat down and remained quiet.  Villaflor approached him and grabbed his left arm.  Villaflor did not identify himself or inform Kahle that he had violated any law or rule or that he was under arrest or otherwise charged with a crime.  Without stating a reason, Villaflor continued to pull Kahle's arm in an attempt to get Kahle to stand.  Kahle remained calm and verbally objected to Villaflor's actions without offering physical resistence.  [Id. at ¶¶ 34-39.]  Carabbacan, who is a Deputy Sheriff, and members of the Senate Sergeant-at-arms staff joined Villaflor.  [Id. at ¶ 40.]

The First Amended Complaint states that Reverend Hockney's prayer continued without interruption and, throughout these events, Senate President Hanabusa did not bang her gavel to restore quiet.  [Id. at ¶ 41.]  Reverend Hockney concluded his prayer by saying, "'We ask all these things in the name of your son, Jesus Christ.'" [Id. at ¶ 42.]  At that time, Huber, who was sitting on the opposite side of the gallery, stood and began the same objection that Kahle stated.  Villaflor and Carabbacan turned and looked briefly at Huber, then turned back to Kahle,

who remained calmly and quietly seated.  During Huber's objection, some members of the audience jeered her and shouted "'Amen!'"  [Id. at ¶¶ 42-44.]

    While Villaflor and Carabbacan escorted Kahle from his seat to the exit doors, Kahle called to Hughes, "'Kevin, on me!'" [Id. at ¶ 45.]  Hughes had been recording the prayer from the media platform.  Hughes filmed Villaflor and Carabbacan as they forcefully ejected Kahle from the gallery.  Villaflor twisted Kahle's wrist and bent his arm back, causing him considerable pain.  Kahle demanded that Villaflor take his hands off him. [Id. at ¶¶ 46-48.]  Kahle called out "'This is a violation of the Constitution!'"  [Id. at ¶ 48.]  Kahle did not offer any physical resistence as he was ejected from the gallery and, throughout Kahle's removal, the Senate session continued uninterrupted. [Id. at ¶¶ 49-50.]

    Hughes followed Kahle, Villaflor, Carabbacan, and the others toward the exit, and continued filming the incident. Arakaki, a member of the Sergeant-at-Arms staff, blocked the exit door, preventing Hughes from leaving the building.  Hughes objected that Arakaki's conduct was illegal.  [Id. at ¶¶ 51-53.] Meanwhile, Villaflor and Carabbacan led Kahle about twenty to twenty-five feet from the Senate Chambers.  "There, Villaflor bent Kahle's arm further back, causing Kahle pain, and then without warning, executed a 'takedown' of Kahle by hooking one of

his legs and holding Kahle's arms . . . ." [Id. at ¶ 54.]
Villaflor then released him and Carabbacan helped him to get up
and sit on a nearby bench. [Id. at ¶ 55.]

Hughes eventually made it past Arakaki and exited the
building. Villaflor observed Hughes with the video camera and
approached him. Villaflor punched the camera, driving the edges
of the camera into Hughes's face. Hughes continued recording and
Villaflor ordered him to stop. [Id. at ¶¶ 57-60.] Kahle rose
from the bench when he saw Villaflor punch Hughes, and Carabbacan
and Kwon immediately tackled him. When Kahle yelled at Hughes to
continue filming, Villaflor ordered his subordinates to get the
camera. Watts, Arakaki, Reid,[2] and others rushed toward Hughes
to stop him from filming. Plaintiffs allege that Senate
Sergeant-at-Arms staffs are not law enforcement officers and
therefore are not trained on the proper use of force. [Id. at ¶¶
63-66.] Villaflor, Watts, Arakaki, Reid, and others "proceeded
as a group to assault Hughes in a gang-style attack, causing
bodily injury and damage to the video camera." [Id. at ¶ 67.]
They "pushed, shoved, tackled, kicked, tripped, kneed, struck and
punched" him in an effort to prevent him from recording. [Id. at
¶ 69.] During the attack, Hughes saw several Deputy Sheriffs,
Carabbacan, Kwon, Schwartz, Muraki, Ogata, and others. He called

---

[2] Watts and Reid are part of the Senate Sergeant-at-Arms
staff.

out for help, but none of them intervened.  Further, although his cries could be heard inside the Senate Chambers, no one came out to investigate or supervise the Senate employees.  [Id. at ¶¶ 71-72.]

During this time, Kwon and Carabbacan held Kahle on the ground and handcuffed him.  [Id. at ¶¶ 74, 76.]  Plaintiffs allege that Kahle had not broken any law and that the Deputy Sheriffs did not have probable cause to arrest him.  Kwon and Carabbacan led Kahle to the elevator.  While inside both the elevator and the OPS office, Kwon and Carabbacan assaulted Kahle and verbally taunted him.  Kwon and Carabbacan stopped their assault when Naauao entered.  Kahle protested that they had assaulted him.  Naauao responded that he was sorry, but he had not seen anything.  Kahle was not told that he was under arrest until after Naauao came in.  No one, however, told him what the charges were or read him his rights.  Naauao, Kwon, Carabbacan and others decided that Kahle should be taken to Halawa Prison instead of the Honolulu Police Department Cell Block.  Schwartz and Kwon drove him to the prison, and Schwartz read Kahle his rights as they approached the prison.  [Id. at ¶¶ 78-85.]

At the prison, Kahle was informed of the charges against him after booking.  Although there were empty cells available, Kahle was placed in a cell with an inmate who had been in prison for seventeen years.  Kahle was released after posting

$300 bail.  [Id. at ¶¶ 87-90.]

Plaintiffs allege that the State failed to conduct an adequate investigation of the incident and none of the individual Defendants received any discipline or faced criminal charges. [Id. at ¶ 93.]  On or about July 2, 2010, the State Auditor issued a Report on the Department of Public Safety ("the Report").  It stated, *inter alia*, that the department was providing the Deputy Sheriffs with inadequate law enforcement training.  There was very limited training in areas such as constitutional law updates and training on the use of force. [Id. at ¶¶ 96-98.]  Plaintiffs allege that the State's "deliberate indifference to its responsibility to hire, train, supervise, investigate employee misconduct and appropriately discipline employees of the State Sergeant-at-Arms and Sheriff Deputies was the moving force or direct causal link between the violations alleged herein."  [Id. at ¶ 102.]

On May 24, 2010, the State filed a criminal complaint charging Kahle with disorderly conduct, in violation of Haw. Rev. Stat. § 711-1101(1)(a) and/or (1)(b) and (3).  The State took no action on the resisting arrest and obstructing government charges that he was also arrested for.  [Id. at ¶¶ 94-95.]  The disorderly conduct charge was based on "'violent and/or tumultuous behavior of pushing people aside once he was outside'" of the Senate Chambers and on "'unreasonable noise caused by his

9

yelling . . . after the start of the invocation[.]'" [Id. at ¶ 103.]  The State, however, did not pursue the violent and/or tumultuous behavior charge at trial, and Kahle was acquitted on the unreasonable noise charge.  [Id. at ¶¶ 104-05.]  In granting the motion for judgment of acquittal, the trial judge stated that the State had not established its prima facie case and that Plaintiff was merely exercising his constitutional right to bring the separation of church and state issue to the legislators' attention.  [Id. at ¶ 106.]

In the instant case, the First Amended Complaint alleges the following claims:

1)   a claim for injunctive and declaratory relief pursuant to § 1983 against "All Defendants Except the State in their Official Capacities"[3] for violations of Plaintiffs' freedom of speech, press, assembly, and petition, as guaranteed by the First Amendment of the United States Constitution and Article I, § 4 of the Hawai`i State Constitution ("Count I"); [First Amended Complaint at pgs. 28-29;]

2)   a § 1983 claim for damages against "All Defendants Except the State in their Individual Capacities"[4] for violations of Plaintiffs' rights to freedom of speech, press, assembly, and petition ("Count II"); [id. at pgs. 29-31;]

3)   a § 1983 claim for injunctive and declaratory relief against the Official Capacity Defendants for violations of Plaintiffs' equal protection rights, as guaranteed by the Fourteenth Amendment of the United States Constitution and Article I, § 5 of the Hawai`i State Constitution ("Count III"); [id. at pgs. 31-32;]

4)   a § 1983 claim for damages against the Individual Defendants for violations of Plaintiffs' equal protection rights

---

[3] The Court will refer to this group as "the Official Capacity Defendants".

[4] The Court will refer to this group as "the Individual Defendants".

("Count IV"); [id. at pgs. 32-33;]

5)   a § 1983 claim for declaratory and injunctive relief against the Official Capacity Defendants for denial of due process, use of excessive force, unlawful seizure, and malicious prosecution, in violation of the Fourth, Fifth, Ninth, and Fourteenth Amendments of the United States Constitution and Article I, §§ 5, 7, and 8 of the Hawai`i State Constitution ("Count V"); [id. at pgs. 33-35;]

6)   a § 1983 claim for damages against the Individual Defendants for denial of due process, use of excessive force, unlawful seizure, and malicious prosecution ("Count VI"); [id. at pgs. 36-38;]

7)   assault and battery against Defendants Villaflor, Kwon, Carabbacan, Schwartz, Watts, Reid, and Arakaki ("Count VII"); [id. at pgs. 38-39;]

8)   false arrest/false imprisonment against Defendants Villaflor, Kwon, Carabbacan, Schwartz, Watts, Reid, and Arakaki ("Count VIII"); [id. at pg. 39;]

9)   intentional infliction of emotional distress ("IIED") against "All Defendants Except Defendant State" ("Count IX"); [id. at pgs. 39-40;]

10)  negligent infliction of emotional distress ("NIED") against all Defendants ("Count X"); [id. at pg. 40;]

11)  malicious prosecution against all Defendants ("Count XI"); [id. at pgs. 40-41;]

12)  negligent hiring, training, supervision, and retention against the State ("Count XII"); [id. at pgs. 41-42;]

13)  negligent investigation against the State ("Count XIII"); [id. at pgs. 42-43;]

14)  a claim for declaratory and injunctive relief under 42 U.S.C. § 1985 against the Official Capacity Defendants for conspiracy to violate civil rights ("Count XIV"); [id. at pgs. 43-44;]

15)  a § 1985 claim for damages against the Individual Defendants for conspiracy to violate civil rights ("Count XV"); [id. at pgs. 44-45;]

16)  a claim for declaratory and injunctive relief under 42 U.S.C. § 1986 against the Official Capacity Defendants for neglecting to prevent a conspiracy to violate civil rights ("Count XVI"); [id. at pgs. 45-46;]

17)  a § 1986 claim for damages against the Individual Defendants for neglecting to prevent a conspiracy to violate civil rights ("Count XVII"); [id. at pgs. 46-47;] and

18)  a civil conspiracy claim against "All Defendants Except the State and Doe Defendants" ("Count XVIII"); [id. at pgs. 47-48].

The First Amended Complaint seeks: a temporary restraining order,

and preliminary and permanent injunctions, including termination

or other disciplinary action against the individual Defendants

and mandatory training; a monetary judgment including pre-

judgment and post-judgment interest; general, special, and

punitive damages; attorneys' fees and costs; and any other

appropriate relief.  [Id. at pgs. 48-50.]

I.    **Motion**

         In the instant Motion, the State Defendants acknowledge

that the Court must accept the facts as pled in the First Amended

Complaint for purposes of the instant Motion.  [Mem. in Supp. of

Motion at 1.]

   A.    **First Amendment and Other Claims Based
          on Alleged Constitutional Violations**

         The State Defendants first argue that Plaintiffs' First

Amendment claims fail because the underlying premise of their

claims is that they were exercising their First Amendment right

of free speech when Kahle spoke out during the State Senate

session and therefore the actions Defendants took in response

either directly violated Plaintiffs' First Amendment rights or

were taken in retaliation for the exercise of those rights.  The

State Defendants argue that this premise is false because state

legislative chambers are not public fora and therefore there is

no First Amendment right to speak out on any topic while in a

legislative chamber during session.  The State Defendants also

note that, pursuant to Article III, § 18 of the Hawai`i State

12

Constitution, it is a crime to show disrespect or to behave in a disorderly or contemptuous manner in the presence of either the House or the Senate.  [Id. at 6-7.]

        The State Defendants emphasize that the United States Supreme Court held in Marsh v. Chambers, 463 U.S. 783 (1983), that an opening prayer in a state legislative session does not violate the First Amendment.  [Id.]

        Further, the First Amended Complaint itself states that Plaintiffs informed the Deputy Sheriffs and the Senate members that they intended to engage in civil disobedience.  The State Defendants argue that, by definition, civil disobedience is breaking the law, in contrast to a peaceful protest.  The individual Defendants are law enforcement personnel who were merely enforcing the law, particularly because Kahle resisted attempts to eject him from the Senate Chambers after his disturbance.  [Id. at 7-8 & n.2 (noting that, pursuant to Haw. Rev. Stat. § 21-17, Senate Sergeant-at-Arms personnel in the performance of their duties are law enforcement officers).]  The actions of the individual Defendants were therefore appropriate. Thus, all of Plaintiffs' claims premised on the assumption that Plaintiffs were exercising their First Amendment rights fail.

        The State Defendants also argue that Plaintiffs cannot bring § 1983 claims, § 1985 claims, or § 1986 claims against the State or against state officials in their official capacities

13

because they are not "persons" within the meaning of those statutes.  Moreover, to the extent that Plaintiffs have alleged §§ 1983, 1985, and 1986 claims against the proper defendants, conduct that is merely actionable under tort law does not necessarily amount to constitutional violations.  [Id. at 8-9.]

        To the extent that Count IV is based on the alleged failure to adopt adequate policies and procedures and the alleged failure to properly supervise and train employees and agents, Plaintiffs have failed to name the state official responsible for adopting policies and for training and supervising the individuals involved in the events at issue.  [Id. at 14.]

    B.  **Claims Seeking Equitable Relief**

        The State Defendants also argue that Plaintiffs are not entitled to injunctive relief because, although a federal court can issue an injunction to a state official to cease violating federal law, that official must have a sufficient nexus to the enforcement of the law at issue.  They contend that Plaintiffs have failed to name such a state official because "a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit."  [Id. at 10 (citations and quotation marks omitted).]  The State Defendants also note that there is very little case law directly addressing the issue whether declaratory relief is available in civil rights actions

14

against state officials.  Even if it is, the State Defendants

contend that Plaintiffs' claim fails for failure to name the

proper state officials.  [Id. at 10-11.]

The State Defendants next argue that Plaintiffs do not

have standing to pursue their claims for equitable relief.

First, Plaintiffs cannot establish a lack of an adequate remedy

at law because, for each claim that they seek equitable relief,

there is a companion claim for damages based on the same conduct.

Second, to the extent that Plaintiffs' claims are based on the

hiring, supervision, and training of government employees, these

are discretionary government functions and claims based on those

functions are not justiciable.  [Id. at 11-12.]  Plaintiffs have

also failed to plead a non-speculative likelihood of substantial

and irreparable injury.  They have only alleged that they expect

to attend future legislative sessions and expect to encounter

similar resistence.  The State Defendants state that it is public

knowledge that, beginning with the 2011 Session, the Senate

abolished opening invocations and prayer.  The State Defendants

therefore argue that the issue is moot.  Further, to the extent

Plaintiffs allege a threat that they will experience a similar

response to future acts of civil disobedience, they do not have a

right to engage in civil disobedience.  [Id. at 19.]

The State Defendants point out that Plaintiffs request

a mandatory injunction, and therefore the Court must be

particularly cautious and only grant relief if the law and the facts clearly favor granting the injunction.  [Id. at 20.]

### C.  **State Law Claims**

The State Defendants point out that there is no private cause of action for violations of the Hawai`i State Constitution. Such claims are not covered by § 1983, and there is no corresponding claim under Hawai`i state law.  [Id. at 12-13.]

As to Count VII (assault and battery), Count VIII (false imprisonment), and Count XI (malicious prosecution), to the extent Plaintiffs have alleged those claims against the State, they are barred by the State Tort Claims Act, Haw. Rev. Stat. § 662-15(4).  The other Defendants are law enforcement officers, and Plaintiffs have not rebutted the law enforcement privilege, which precludes their assault and battery claim. Further, there was probable cause or reasonable suspicion to believe Plaintiffs had committed a crime because interrupting a Senate session is illegal under the Hawai`i State Constitution. As to the malicious prosecution claim, the proper defendant is the county prosecutor who initiated and prosecuted the criminal charges against Kahle.  [Id. at 15-16.]

Count IX (IIED) and Count X (NIED) fail because Plaintiffs admit that they were engaged in civil disobedience, and the individual Defendants, acting in the course of their official duties, merely responded to Plaintiffs' commission of a

16

crime.  Their actions therefore cannot support an IIED or a NIED claim.  [Id. at 16.]

Count XII (negligent hiring, training, supervision, discipline, and retention) fails because Plaintiffs have only pled this claim against the State, and it does not meet the discretionary function exception to the State Tort Claims Act. [Id. (citing Haw. Rev. Stat. § 662-15(1)).]

Count XIII (negligent investigation) fails because this is not a recognized cause of action.  Further, to the extent that Plaintiffs apparently challenge Defendants' failure to properly investigate the events at issue in this case, any failure to investigate could not be the legal cause of Plaintiffs' alleged damages.  [Id. at 16-17.]

Count XVIII (civil conspiracy) alleges that Plaintiffs told Defendants they intended to engage in a peaceful protest and the individual Defendants conspired to violate Plaintiffs' constitutional rights, but the State Defendants argue that this is inconsistent with the other allegations in the First Amended Complaint in which Plaintiffs refer to their protests as civil disobedience.  Moreover, this claim is premised on the non-existent violation of Kahle's free speech rights.  [Id. at 18.]

## II.  Memorandum in Opposition

In their memorandum in opposition, Plaintiffs first note that the State Defendants misstate some of the factual

allegations in the First Amended Complaint.  In particular,
Plaintiffs emphasize numerous portions of the First Amended
Complaint that refer to Plaintiffs' actions as **peaceful** acts of
civil disobedience.  Plaintiffs also argue that the State
Defendants' summary of the factual allegations in the First
Amended Complaint omitted critical facts.  [Mem. in Opp. at 1-4.]

In addition, Plaintiffs present additional facts set
forth in deposition testimony.  They note that, in a motion for
judgment on the pleadings, if matters outside the pleadings are
presented and considered by the court, the motion is treated as
one for summary judgment.  In that case, pursuant to Fed. R. Civ.
12(d), all parties must have a reasonable opportunity to present
all the material that is pertinent the motion.  Plaintiffs
emphasize that, if they can show by affidavit or declaration that
they cannot present facts essential to justify their opposition
to the Motion, this Court can deny the Motion or defer ruling to
allow Plaintiffs to conduct discovery pursuant to Fed. R. Civ. P.
56(d).  [Id. at 7-9.]

A.   <u>Constitutional Claims</u>

Plaintiffs argue that the State Defendants' reliance on
<u>Marsh v. Chambers</u>, 463 U.S. 783 (1983), is misplaced because that
case did not hold that all legislative prayers were
constitutional.  The case addressed Nebraska's legislative
chaplaincy, and that chaplain kept his prayers non-

18

denominational, removing all references to Christ.  Plaintiffs
emphasize that subsequent cases applying Marsh focus upon that
fact.  [Id. at 9-11.]  Plaintiffs note that the First Amended
Complaint alleges the prayer at issue in this case violated the
Establishment Clause because it referred to "Father" and "your
Son, Jesus Christ" and therefore proselytized Christianity.  [Id.
at 11.]

Plaintiffs also refute the State Defendants' argument
that is no First Amendment right to free speech in state
legislative chambers during a session.  Any free speech claim is
subject to a three-step analysis: is the speech protected under
the First Amendment; what is the nature of the forum; and do the
justifications for exclusion from the forum meet the requisite
standard.  Plaintiffs emphasize that the government may not
regulate speech based on the speaker's ideology or perspective,
and the government may not apply an otherwise valid time, place,
and manner restriction based on the speaker's viewpoint.  [Id. at
11-12.]  Plaintiffs cite Norse v. City of Santa Cruz, 629 F.3d
966, 976 (9th Cir. 2010) (en banc), in which the Ninth Circuit
recognized that the government could not extinguish First
Amendment rights at public city council meetings.  The Ninth
Circuit held that, although the government could prohibit
disruptive conduct, it could not define disruptions in such a way
as to prevent the exercise of First Amendment rights in ways that

19

did not actually cause a disruption.  [Id. at 14-15.]  Plaintiffs note that Kahle engaged in protected speech inside the Senate Chambers and in the Capitol Rotunda, a public forum, and it is an issue for the jury to determine what was reasonable for each forum.  [Id. at 21.]

Plaintiffs emphasize that a government regulation which allows arbitrary application is unconstitutionally overbroad because it has the potential to allow the suppression of a particular viewpoint.  Plaintiffs therefore argue that any rule or provision that Defendants relied upon as the basis for Kahle's removal from the Senate Chambers was unconstitutionally overbroad because it allows the arbitrary suppression of a particular viewpoint - those that voice objection to the violation of the Establishment Clause as opposed to Christians who are allowed to respond to the prayer by shouting "amen".  [Id. at 13-14.]

Plaintiffs argue that the Court must deny the Motion because the First Amended Complaint does not allege that Kahle's objection to the prayer interrupted or disrupted the Senate session or violated any law.  In fact, the First Amended Complaint alleges that the session continued without interruption and, of the three criminal charges brought against Kahle, two were dropped and a motion for judgment of acquittal was granted as to the third.  [Id. at 16-17.]

Plaintiffs also argue that Kahle's objection to the prayer is also protected under his First Amendment right to petition the government to address grievances.  They state Kahle previously attempted to petition legislators to object to the practice, but his petitions were ignored.  Thus, he decided to protest in the Senate Chambers and to film the protest as a last resort.  Plaintiffs also emphasize that the Senate prayer was open to public participation because the public was directed to stand and bow their heads in prayer.  As a member of the public who was invited to participate, Kahle was entitled to object. [Mem. in Opp. at 19-20, Decl. of Mitchell Kahle ("Kahle Decl.").]

Plaintiffs argue that Defendants also violated the First Amendment right to freedom of the press.  Hughes filmed Kahle's protest and Defendants' response thereto, and Plaintiffs intended to post the video on HCSSC's website.  Plaintiffs argue that Hughes had a First Amendment right to film and expose Defendants' violation of Kahle's rights.  [Id. at 21-22.]

As to the State Defendants' argument that Plaintiffs failed to join an indispensable party, Plaintiffs argue that it is still possible to join other parties, and they note that Villaflor has supervisory power over Watts, Arakaki, and Paul Reid.  Naauao oversees Muraki, the Watch Commander, as well as the Deputy Sheriffs at the State Capitol, and Muraki supervises the Deputy Sheriffs (Carabbacan, Kwon, and Schwartz).

21

Even if the State Defendants properly raised a Fed. R. Civ. P. 19 issue, dismissal is not warranted because Plaintiffs have asked this Court to defer ruling on the instant Motion because of necessary discovery.  For example, defense counsel has represented to Plaintiffs' counsel that the Department of Public Safety wants to provide training, but there are budgetary issues. Discovery will uncover who is the state official responsible for allocating funds to provide adequate training to the Deputy Sheriffs and the Sergeant-at-Arms staff.  [Id. at 22-24, Decl. of Stephanie L. Marn at ¶¶ 5-6.]

B.   **Discretionary Function Defense**

Plaintiffs argue that the discretionary function defense is inapplicable in this case, and they note that the State Defendants cited case law applying the Federal Tort Claims Act, not the State Tort Liability Act.  Under Hawai`i law, the discretionary function exception is limited to official actions to effectuate broad public policy.  The hiring, supervision, and training of Sergeant-at-Arms staff and Deputy Sheriffs do not involve broad policy considerations, and therefore the discretionary function exception to the State's waiver of sovereign immunity in the State Tort Liability Act does not apply.  [Id. at 24-25.]

C.   **Immunity**

As to the State Defendants' argument that state

officials sued in their official capacities have immunity from §
1983 suits, Plaintiffs emphasize that this rule does not apply to
actions for prospective declaratory and injunctive relief. [Id.
at 25-26.]

       D.   **Equitable Relief**

     As to the State Defendants' argument that Plaintiffs
lack standing to obtain injunctive relief because of the
abolition of the opening invocations, Plaintiffs argue that
standing is determined at the commencement of the litigation and,
when they filed this action in November 2010, the State Senate
had not yet abolished the practice of an opening invocation.  As
to the issue whether Plaintiffs' claim is moot, Plaintiffs
emphasize that there is a stringent standard to find a case moot
because of subsequent events.  The State Defendants cannot
prevail on mootness grounds because they have not shown that the
practice of legislative prayer cannot reasonably be started
again.  Plaintiffs also emphasize that the Ninth Circuit has held
that a threat of legal sanctions and other means of coercion,
persuasion, and intimidation can also violate the First
Amendment.  Plaintiffs argue that Defendants are not properly
trained to respond to similar events and/or that Defendants acted
with malice toward Plaintiffs.  Thus, the dismissal of the claims
for equitable relief would chill the exercise of First Amendment
rights.  [Id. at 26-28.]

Plaintiffs also contend that there is no adequate remedy at law because Kahle is a political activist who addresses a number of issues.  There is a substantial likelihood that he will attend future legislative sessions and encounter Defendants, or other similarly situated officials, and that he will suffer a similar violation of his rights.  He therefore has standing to pursue equitable relief because the alleged violations are capable of repetition yet evading review.  Further, monetary damages alone cannot compensate him for the violation of his rights.  [Id. at 28.]

**E.  State Law Claims**

As to the State Defendants' assertion regarding Counts VII (assault and battery) and VIII (false arrest/false imprisonment) that Defendants had probable cause to detain, arrest, and prosecute Kahle, Plaintiffs argue that Defendants' position is contradicted by paragraph 107 of the First Amended Complaint.

As to Count IX (IIED), Plaintiffs emphasize that the First Amended Complaint does not plead or admit that Plaintiffs were engaged in civil disobedience in violation of any law; Kahle was only engaged in peaceful conduct.  Further, the Sergeant-at-Arms personnel who attacked Hughes, and the Deputy Sheriffs who stood idly by, could not have been acting in the performance of their duties because Hughes was only filming and the State

Defendants cannot argue that Hughes disrupted the session.
Plaintiffs therefore argue that Defendants' conduct was
sufficiently outrageous to support an IIED claim.  [Mem. in Opp.
at 29.]

As to Count XI (malicious prosecution), Plaintiffs
argue that Defendants can be held liable because they aided in
conducting or maintaining the criminal prosecution.  They acted
as the complainant and/or witnesses and they provided false
statements and investigative reports.  [Id. at 30.]

Finally, as to Count XIII, Plaintiffs argue that there
is a state law cause of action for negligent investigation.  [Id.
(citing Tseu ex rel. Hobbs v. Jeyte, 88 Hawai`i 85, 92, 962 P.2d
344, 351 (1998)).]

III. **Reply**

In their reply, the State Defendants object to the
conversion of the Motion to a motion for summary judgment.
[Reply at 3.]

The State Defendants emphasize that Plaintiffs failed
to respond to the Motion's arguments regarding Counts VII, VIII,
X, XIV, XV, XVI, XVII, and XVIII, and therefore conceded them.
[Id. at 4.]

The State Defendants clarify that they are not invoking
Eleventh Amendment immunity as to the § 1983 claims; their
position is that the State and the individuals sued in their

25

official capacities are not persons under the relevant statutes. Further, although prospective injunctive relief is available, Plaintiffs have failed to name the proper defendant who has the authority to effectuate the relief sought.  As to standing, although it is determined at the time of the filing of the Complaint, Plaintiffs cannot prove that, at the time this Court would issue an injunction, they have an immediate threat of irreparable harm.  [Id. at 4-6.]

        The State Defendants recognize that the Hawai`i courts have taken a more narrow view of what constitutes a discretionary function than the federal courts have, but they argue those cases apply the State Tort Liability Act, and federal law applies in this case.  Further, even under Hawai`i law, the decision to adopt a training program for Sergeant-at-Arms staff and Deputy Sheriffs is a discretionary function.  [Id. at 6.]

        As to the freedom of the press claim, the State Defendants emphasize that Hughes was not a member of any working press organization.  They acknowledge that some circuits have expanded freedom of the press protection to anyone filming subjects which may be considered of public interest, but there is no Ninth Circuit law on that issue.  The State Defendants acknowledge that this issue may be more pertinent to the upcoming motions for qualified immunity.  [Id. at 7-8.]

As to the free speech issue, the State Defendants emphasize that the Senate Chambers is a non-public forum, as compared to municipal and city council meetings, which are limited public fora.  Unlike city council meetings, no public comment is taken during Senate sessions.  Thus, the restriction against public speech from the gallery is complete and viewpoint neutral.  Plaintiffs have also tried to "bootstrap" a right to petition the government claim onto the free speech claim, but the State Defendants argue that the right to petition claim is not properly pled in the First Amended Complaint.  [Id. at 9-10.] The State Defendants also argue that the criminal trial judge's remarks about Kahle's First Amendment rights is merely "*obiter dicta*" and is not binding on this Court.  [Id. at 11-12.]

As to the negligent investigation claim, the State Defendants argue that the investigation in this case was after the fact and therefore the alleged lack of a complete investigation could not have been the source of the alleged harm to Plaintiffs.  The case that Plaintiffs cited, Tseu, is distinguishable because in that case the negligent investigation itself was the source of the harm.  Similarly, any lack of disciplinary action for the incident at issue was not the cause of Plaintiffs' harm.  [Id. at 11.]

As to Plaintiffs' claim that the Deputy Sheriff Defendants are liable to Hughes because they did not come to his

27

aid when he called out for the police to help him, the State

Defendants argue that, in the absence of a special relationship,

there is no cause of action for failure to protect.  [<u>Id.</u> at 12.]

Finally, the State Defendants argue that it is not

necessary to address the constitutionality of the invocation

itself.  If the Court is inclined to do so, they argue that it is

not clear whether the fact that the prayer in <u>Marsh</u> did not

contain any references to Christ was an essential basis of the

decision.  [<u>Id.</u> at 12-14.]

<u>**STANDARD**</u>

Fed. R. Civ. P. 12(c) states: "After the pleadings are

closed--but early enough not to delay trial--a party may move for

judgment on the pleadings."  In considering a Rule 12(c) motion,

a court must accept as true all factual allegations in the

complaint, and construe them in the light most favorable to the

non-moving party.  <u>Fleming v. Pickard</u>, 581 F.3d 922, 925 (9th

Cir. 2009).  The court should grant a motion for judgment on the

pleadings when there are no disputed issues of material fact, and

the moving party is entitled to judgment as a matter of law.  <u>Id.</u>

Prior to <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937 (2009), the

Ninth Circuit recognized that Rule 12(c) motions are virtually

identical to Rule 12(b)(6) motions, and applied the same standard

of review to both motions.  <u>Dworkin v. Hustler Magazine, Inc.</u>,

867 F.2d 1188, 1192 (9th Cir. 1989) (holding that Rule 12(c) and

28

Rule 12(b)(6) motions differ in time of filing but are otherwise "functionally identical," and applying the same standard of review).  Following Iqbal, courts have applied Iqbal to Rule 12(c) motions.  See, e.g., Point Ruston, L.L.C. v. Pac. Nw. Reg'l Council of the United Bhd. of Carpenters & Joiners of Am., 658 F. Supp. 2d 1266, 1273 (W.D. Wash. 2009).

Accordingly, pursuant to Iqbal, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Iqbal, 129 S. Ct. at 1949 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Weber v. Dep't of Veterans Affairs, 521 F.3d 1061, 1065 (9th Cir. 2008).  This tenet - that the court must accept as true all of the allegations contained in the complaint - "is inapplicable to legal conclusions."  Iqbal, 129 S. Ct. at 1949.  Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. (citing Twombly, 550 U.S. at 555).  Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (citing Twombly, 550 U.S. at 556).  Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief as required by Fed.

R. Civ. P. 8.  Id. at 1950.

Further, "dismissal without leave to amend is improper unless it is clear that the complaint could not be saved by any amendment." Harris v. Amgen, Inc., 573 F.3d 728, 737 (9th Cir. 2009) (citation and quotation marks omitted).

If, on a motion for judgment on the pleadings, "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).  This Court, however, in the exercise of its discretion, DECLINES to convert the instant Motion into a motion for summary judgment; the Court will not consider material beyond the pleadings. See, e.g., Young v. City of Visalia, 687 F. Supp. 2d 1141, 1150 (E.D. Cal. 2009) ("a district court is not obliged to convert a 12(b)(6) motion to one for summary judgment in every case in which a defendant seeks to rely on matters outside the complaint . . . ." (citations and quotation marks omitted)).

## DISCUSSION

## I.  Claims for Constitutional Violations

Counts I through IV allege claims pursuant to § 1983; Counts XIV and XV allege claims pursuant to § 1985; and Counts XVI and XVII allege claims pursuant to § 1986.

### A.  Individual Defendants in Their Official Capacities

Counts I, III, V, XIV, and XVI allege claims seeking

30

declaratory and injunctive relief against the State and the

individual Defendants who Plaintiffs named in their official

capacities.   The Ninth Circuit has recognized that:

> The Eleventh Amendment limits § 1983
> claims . . . .  In <u>Will v. Michigan Department of
> State Police</u>, 491 U.S. 58, 70, 109 S. Ct. 2304,
> 105 L. Ed. 2d 45 (1989), the Supreme Court held
> that "States or governmental entities that are
> considered 'arms of the State' for Eleventh
> Amendment purposes" are not "persons" under §
> 1983.  Moreover, <u>Will</u> clarified that "a suit
> against a state official in his or her official
> capacity . . . . is no different from a suit
> against the State itself."  <u>Id.</u> at 71, 109 S. Ct.
> 2304. . . .   Therefore, state officials sued in
> their official capacities . . . are not "persons"
> within the meaning of § 1983 and are therefore
> generally entitled to Eleventh Amendment immunity.
>        <u>Will</u> recognized one vital exception to this
> general rule: **When sued for prospective injunctive
> relief, a state official in his official capacity
> is considered a "person" for § 1983 purposes.**
> <u>Will</u>, 491 U.S. at 71 n.10, 109 S. Ct. 2304 ("Of
> course a state official in his or her official
> capacity, when sued for injunctive relief, would
> be a person under § 1983 because
> 'official-capacity actions for prospective relief
> are not treated as actions against the
> State.'"). . . .

<u>Flint v. Dennison</u>, 488 F.3d 816, 824-25 (9th Cir. 2007) (emphasis

added) (some citations omitted).

      At the hearing on the Motion, Plaintiffs' counsel

stated: "With respect to . . . the 1983 claims against defendants

in their official capacities, I think in our memorandum we

explained that those are only being asserted for the equitable

relief[.]"  [1/17/12 Hrg. Trans., filed 1/19/12 (dkt. no. 174),

at 4.]  In light of counsel's representation and the relevant

case law, the Court GRANTS the State Defendants' Motion insofar as the Court DISMISSES the portions of Counts I, III, V, XIV, and XVI alleging claims for declaratory relief against Defendants Villaflor, Arakaki, Carabbacan, Kwon, Schwartz, Muraki, Naauao, Watts, Reid, and Ogata, in their official capacities.   The dismissal is WITH PREJUDICE because Plaintiffs cannot save these portions of the claims by amendment.[5]   Except as otherwise stated in this Order, the portions of Counts I, III, V, XIV, and XVI seeking injunctive relief against these defendants and the portions of those counts seeking injunctive and declaratory relief against the State remain.

    **B.   <u>Violations of the Hawai`i State Constitution</u>**

        Plaintiffs assert their § 1983 claims in Counts I through VI based on alleged violations of both the United States Constitution and the Hawai`i State Constitution.   To the extent that Counts XIV through XVII assert conspiracy claims based on the § 1983 claims, those claims also rely on alleged violations of both the United States Constitution and the Hawai`i State Constitution.   The portions of these claims based on alleged violations of the Hawai`i State Constitution fail as a matter of law.   See <u>Alston v. Read</u>, 678 F. Supp. 2d 1061, 1074 (D. Hawai`i

---

        [5] Although the Motion does not seek relief on behalf of Defendants Reid and Ogata in their official capacities, unless stated otherwise in this Order, the Court's analysis applies to them in the same manner as to the other individual Defendants sued in their official capacities.

2010) ("Section 1983 is a remedy for violations of certain
federal rights.  Violations of state law (including a state
constitution), however, are not cognizable under Section 1983."
(citing <u>Moreland v. Las Vegas Metro. Police Dep't</u>, 159 F.3d 365,
371 (9th Cir. 1998))), *reversed on other grounds*, 663 F.3d 1094
(9th Cir. 2011).

The Court therefore GRANTS the State Defendants' Motion
insofar as the Court DISMISSES the portions of Counts I through
VI and the portions of Counts XIV through XVII alleging claims
based on alleged violations of the Hawai`i State Constitution.
The dismissal is WITH PREJUDICE because Plaintiffs cannot save
these claims by amendment.[6]  Except as otherwise stated in this
Order, the portions of Counts I through VI and the portions of
Counts XIV through XVII based on alleged violations of the United
States Constitution remain.

C.   **Kahle's Right to Freedom of Speech & Remaining Claims**

The State Defendants argue that Plaintiffs' claims
based on the alleged violation of Kahle's First Amendment right
to freedom of speech fail because the Senate Chambers is a non-
public forum, and therefore Kahle had no First Amendment right to
speak out in objection to the invocation.  The State Defendants
also argue that, because Kahle's free speech claims fail, many of

_____

[6] Unless otherwise specified, the Court's analysis of the
claims addressed in this Order applies to the non-moving
defendants in the same manner as to the moving defendants.

33

Plaintiffs' other constitutional claims fail as well because they
presume the violation of Kahle's right to free speech.  The State
Defendants' arguments are misplaced.

The determination whether a plaintiff's First Amendment
right to freedom of speech has been violated is based a
"traditional tripartite forum analysis: we must first determine
the relevant forum in which [the plaintiff] seeks to exercise his
First Amendment rights; then decide whether the forum is public
or nonpublic in nature; and, finally, we must apply the
appropriate level of scrutiny as dictated by the nature of the
forum."  Currier v. Potter, 379 F.3d 716, 727 (9th Cir. 2004)
(citing Cornelius v. NAACP Legal Def. & Educ. Fund, Inc., 473
U.S. 788, 797, 105 S. Ct. 3439, 87 L. Ed. 2d 567 (1985)).

The Court takes judicial notice pursuant to Fed. R.
Evid. 201(b)(1) and (c)(1) of the nature of the proceedings that
occur in the Senate Chambers while the Senate is in session and
finds that it is a non-public forum.  That fact, however, does
not mean that Kahle had no free speech rights when he attended
the session.  The Ninth Circuit has recognized that:

> In a nonpublic forum, our scrutiny is less
> exacting: "In addition to time, place, and manner
> regulations, the State may reserve the forum for
> its intended purposes, communicative or otherwise,
> as long as the regulation on speech is reasonable
> and not an effort to suppress expression merely
> because public officials oppose the speakers's
> view." [Perry Educ. Ass'n v. Perry Local
> Educators' Ass'n, 460 U.S. 37,] 46, 103 S. Ct. 948
> [(1983)].  Such sparing treatment stems from the

> oft-recognized principle that the "First Amendment
> does not guarantee access to property simply
> because it is owned or controlled by the
> government." Id. (quoting [United States Postal
> Serv. v. Council of] Greenburgh [Civic Ass'ns],
> 453 U.S. [114,] 129, 101 S. Ct. 2676 [(1981)]);
> see also Int'l Soc'y for Krishna Consciousness,
> Inc. v. Lee, 505 U.S. 672, 678, 112 S. Ct. 2701,
> 120 L. Ed. 2d 541 (1992); United States v.
> Kokinda, 497 U.S. 720, 725, 110 S. Ct. 3115, 111
> L. Ed. 2d 571 (1990) (plurality op.).

Id. at 728-29 (some alterations in original) (footnote omitted).

Under this analysis, the primary issues relevant to Kahle's free

speech claims are: whether Kahle was ejected from the Senate

Chambers pursuant to a complete, content-neutral ban on public

speech during the Senate session; and whether that ban was

reasonable.  The allegations in the First Amended Complaint and

the representations in the parties' filings in connection with

the instant Motion reveal that there are disputed issues of

material fact on these issues, and the Court cannot say that the

State Defendants are entitled to judgment as a matter of law on

Kahle's free speech claims.

      The State Defendants argued that, if the Court

dismissed Kahle's free speech claims, it must also dismiss

Kahle's related claims.  Their theory is that, if Kahle had no

First Amendment right to speak out against the invocation,

Defendants could not have violated Kahle's constitutional rights

in removing Kahle from the Senate Chambers, detaining him, and

arresting him.  Further, his prosecution for the events

associated with his objection could not have violated his
constitutional rights.  This Court agrees with the State
Defendants that many of Plaintiffs' constitutional claims are
related, although the Court emphasizes that it is not finding
that a ruling for one party on the free speech claims compels a
ruling for that party on all of the related constitutional claims
as well.  This Court merely finds that, similar to Kahle's free
speech claims, there are also disputed issues of material fact as
to Kahle's related constitutional claims and that judgment on the
pleadings is not warranted.

Some of Plaintiffs' constitutional claims are not
directly related to Kahle's free speech claims.  Counts I and II
allege violations of Hughes' First Amendment right to freedom of
the press.  The State Defendants acknowledge that the law is
unsettled in this area and that the resolution of these claims
may depend on contested facts in this case.  Thus, they recognize
that the determination of those claims may be more appropriate
when this Court addresses the pending motions for summary
judgment on the basis of qualified immunity.  This Court agrees.
The State Defendants are not entitled to judgment on the
pleadings as to Plaintiffs' First Amendment claim based on the
alleged denial of Hughes' right to freedom of the press.

As to Kahle's First Amendment claims based on the
alleged denial of his right to petition the government, the State

Defendants argue that Plaintiffs have merely "bootstrapped" these
claims onto Kahle's free speech claims and that the First Amended
Complaint does not allege facts supporting claims for violation
of the right to petition the government.  While the factual
allegations in the First Amended Complaint regarding the right to
petition claims are not well-developed, the First Amended
Complaint does allege that Kahle and his organization, HCSSC,
have objected to religious invocations at the State Legislature
for many years and that, immediately prior to the incident at the
Senate Chambers, Kahle sent a series of emails to various
legislators objecting to the practice.  [First Amended Complaint
at ¶¶ 20-24.]  For the purposes of the instant Motion, the Court
must view the First Amended Complaint in the light most favorable
to Plaintiffs.  In view of this deferential standard, this Court
finds that, based on the allegations in the First Amended
Complaint, Kahle's verbal objection to the Senate's invocation
can be reasonably interpreted as part of an on-going attempt to
persuade the senators and other elected officials of the error in
the practice.  Defendants allegedly retaliated against him for
doing so.  For purposes of the instant Motion only, this Court
finds that Plaintiffs have alleged a plausible claim for
violation of Kahle's right to petition the government.  <u>See</u>
<u>United States v. Kincaid-Chauncey</u>, 556 F.3d 923, 941-42 (9th Cir.
2009) ("The political system functions because lobbyists and

37

others are able to persuade elected officials of the wisdom or
error of policy proposals.  We echo the admonition that [s]uch
endeavors . . . are protected by the right 'to petition the
Government for a redress of grievance[s]' guaranteed by the First
Amendment of the United States Constitution." (citation and some
internal quotation marks omitted) (alterations in original)).
The State Defendants are not entitled to judgment on the
pleadings as to Plaintiffs' First Amendment claims based on the
alleged denial of Kahle's right to petition the government.

As to Plaintiffs' First Amendment claims based on the
alleged denial of their right to assemble, the factual basis for
this claim is unclear.  The Court cannot determine where and how
Plaintiffs allege Defendants prevented Plaintiffs from assembling
together.  Further, even if Defendants allegedly prevented
Plaintiffs from assembling at a particular place, such as in the
Senate Chambers or in the rotunda, that "does not equate to a
denial of assembly altogether."  See San Jose Christian Coll. v.
City of Morgan Hill, 360 F.3d 1024, 1033 (9th Cir. 2004)
(citation omitted).  The First Amended Complaint therefore fails
to allege plausible § 1983 claims for violations of Plaintiffs'
First Amendment right to freedom of assembly.  The State
Defendants are entitled to judgment as a matter of law as to
Plaintiffs' § 1983 claims based on alleged violations of
Plaintiffs' right to freedom of assembly.  It is, however,

38

arguably possible for Plaintiffs to amend the defects in these claims by amendment.

The Court therefore GRANTS the State Defendants' Motion to the extent that the Court DISMISSES WITHOUT PREJUDICE the portions of Count I and Count II alleging violations of Plaintiffs right to freedom of assembly.  The State Defendants' Motion is DENIED as to all other portions of Counts I, II, III, IV, V, VI, XIV, XV, XVI, and XVII.

## II.  State Common Law Claims

### A.  Malicious Prosecution

The State Defendants argue that the Court should dismiss Count XI (malicious prosecution), which Plaintiffs allege against all Defendants, because it was the City and County of Honolulu prosecutor who initiated and prosecuted the criminal case against Kahle.  Plaintiffs respond that Defendants are liable for malicious prosecution because they aided in conducting or maintaining the criminal case against Kahle.

The Hawai`i Supreme Court has stated:

> The tort of malicious prosecution permits a plaintiff to recover when the plaintiff shows that the prior proceedings were (1) terminated in the plaintiff's favor, (2) initiated without probable cause, and (3) initiated with malice.  Brodie v. Hawai`i Auto. Retail Gasoline Dealers Ass'n, Inc., 2 Haw. App. 316, 318, 631 P.2d 600, 602 (1981), rev'd on other grounds, 65 Haw. 598, 655 P.2d 863 (1982) (citing Prosser, Law of Torts § 120, at 850-56); Wong [v. Cayetano], 111 Hawai`i 462, 478, 143 P.3d 1, 17 (2006) (citing Reed v. City and County of Honolulu, 76 Hawai`i 219, 230, 873 P.2d

98, 109 (1994)).

Young v. Allstate Ins. Co., 119 Hawai`i 403, 417, 198 P.3d 666, 680 (2008).  In considering the issue of which defendants may be held liable for malicious prosecution, this district court has stated:

> In Hawaii, the Territorial Court recognized that liability for malicious prosecution was only for those persons "who instituted or aided in conducting or maintaining the criminal prosecution." Orth v. Basker, 30 Haw. 520, No. 1821, 30 Haw. 520, 1928 WL 3407, at *1 (Haw. Terr. Aug. 24, 1928).  The Court stated that it is insufficient to find liability based on "[m]ere passive acquiescence in the institution or in the conduct of such a prosecution by another . . . ." Orth, 30 Haw. 520, 1928 WL 3407 at *1. **The defendant must appear to have actively instigated or instituted the alleged malicious prosecution, and the defendant's affirmative action must be the responsible or proximate cause of maliciously putting the law in motion.** See Orth, 30 Haw. 520, 1928 WL 3407, at *2.  The defendant's affirmative act in connection with the prosecution must be in the form of advice, encouragement, or other similar action.  Id.  **"The ultimate question is whether there was evidence fairly tending to show that the defendant's conduct in the matter in any way exerted a controlling influence over the action of the public prosecutor."** Id. (internal citation and ellipses omitted).

Black v. Correa, Civil No. 07-00299 DAE-LEK, 2009 WL 1789294, at *15 (D. Hawai`i June 22, 2009) (emphases added).

This Court takes judicial notice pursuant to Fed. R. Evid. 201(b)(1) and (c)(1) of the fact that: criminal charges in the City and County of Honolulu ("the City") are initiated and prosecuted by the City Department of the Prosecuting Attorney.

The compelling question is: who was the complaining witness or witnesses upon whose purported testimony or evidence the criminal charge was based?  For purposes of the instant Motion, this Court finds that these facts, together with the factual allegations in the First Amended Complaint, are not sufficient to allege a plausible claim for malicious prosecution against the State.

Likewise, except for paragraph 154, the First Amended Complaint does not contain any allegations supporting Plaintiffs' argument that the individual Defendants aided in conducting or maintaining the criminal prosecution against Kahle.  Paragraph 154 alleges, *inter alia*, "[a]s a proximate result of Defendants Villaflor and other Doe Defendants recommending and/or instituting the State prosecution of Kahle, Kahle suffered mental pain, anguish and suffering . . . ."  [First Amended Complaint at ¶ 154.]  The Court therefore finds, for purposes of the instant Motion only, that the First Amended Complaint alleges a plausible claim for malicious prosecution against Defendant Villaflor.  The Court also finds that the First Amended Complaint does not allege a plausible claim for malicious prosecution against any of the other individual Defendants.  There are genuine disputes of material fact as to whether the discretionary function exception applies to the malicious prosecution claim against the State and Defendant Villaflor.

41

The Court therefore DENIES the State Defendants' Motion
as to Count XI (malicious prosecution) against Defendant
Villaflor, and GRANTS the Motion as to Count XI against the State
and all other individual Defendants.  Count XI is DISMISSED as to
the State and Defendants Arakaki, Carabbacan, Kwon, Schwartz,
Muraki, Naauao, Watts, Reid, and Ogata, in their official and
individual capacities.  The dismissal is WITHOUT PREJUDICE,
subject to the section of this Order addressing Leave to Amend,
*infra*.

### B.  Negligent Investigation

The State Defendants argue that the Court should
dismiss Count XIII (negligent investigation) because this is not
a recognized cause of action under Hawai`i law and, to the extent
that there is such a claim, Plaintiffs have not alleged how the
State's failure to investigate the incident was the legal cause
of Plaintiffs' alleged damages.  Plaintiffs allege this claim
against the State only.

The Hawai`i Supreme Court has recognized that a claim
for negligent investigation is a claim upon which relief can be
granted; it is a form of a common law negligence claim.  Tseu ex
rel. Hobbs v. Jeyte, 88 Hawai`i 85, 91, 962 P.2d 344, 350 (1998).
As to the State Defendants' argument that the alleged failure to
investigate was not the cause of Plaintiffs' alleged damages, the
Court agrees with Defendants as to Hughes' claim for negligent

42

investigation and as to Kahle's claim based on the theory that
the failure to investigate the incident caused him to suffer
physical injuries.  The only physical injuries Kahle alleged in
the First Amended Complaint are those he suffered on the day of
the incident.  Kahle, however, alleges that he suffered emotional
distress and economic and non-economic damages as a result of the
alleged malicious prosecution arising from the incident.  Viewing
the First Amended Complaint as a whole in the light most
favorable to Plaintiffs, the Court finds that it alleges a
plausible claim that the State's failure to investigate the
incident was a proximate cause of the damages that Kahle suffered
as a result of the criminal prosecution against him arising from
the incident.

        The Court therefore GRANTS the State Defendants' Motion
insofar as Hughes' claim for negligent investigation and Kahle's
claim for negligent investigation based on the physical injuries
he allegedly suffered on the day of the incident are DISMISSED.
The dismissal is WITH PREJUDICE because Plaintiffs cannot save
these portions of the claim by amendment.  The Court DENIES the
State Defendants' Motion as to Kahle's claim for negligent
investigation based on the damages he allegedly suffered as a
result of the criminal prosecution against him arising from the
incident.

C.   **Civil Conspiracy**

Count XVIII alleges a state common law claim for civil conspiracy against all of the individual Defendants.

> The Hawai`i Supreme Court has defined civil conspiracy as the "combination of two or more persons or entities by concerted action to accomplish a criminal or unlawful purpose, or to accomplish some purpose not in itself criminal or unlawful by criminal or unlawful means." Robert's Haw. Sch. Bus, Inc. v. Laupahoehoe Transp. Co., 91 Hawai`i 224, 252 n.28, 982 P.2d 853, 881 n.28 (1999) (emphasis added), *superseded by statute on other grounds as stated in* Hawai`i Med. Ass'n v. Hawai`i Med. Serv. Ass'n, Inc., 113 Hawai`i 77, 148 P.3d 1179 (2006).  The supreme court explained that "[c]ivil conspiracy does not alone constitute a claim for relief." Id. at 260 n.44, 982 P.2d at 889 n.44.  In other words, concerted action is not enough.  A civil conspiracy claim must include either that the alleged conspirators had a criminal or unlawful purpose for their concerted action or that the alleged conspirators used criminal or unlawful means to accomplish a lawful objective.

Miyashiro v. Roehrig, Roehrig, Wilson & Hara, 122 Hawai`i 461, 482, 228 P.3d 341, 362 (Ct. App. 2010) (alteration in Miyashiro). The Court finds that the First Amended Complaint does not allege that the individual Defendants had a criminal or unlawful purpose for their concerted action.

The First Amended Complaint alleges that "[p]rior to the start of the Senate Session on April 29, 2010, various of the Defendants and Doe Defendants met to discuss or otherwise communicated that Plaintiff Kahle and members of HCSSC would be in attendance at the Senate Session and given instructions

44

respecting Plaintiff Kahle and/or his protest."  [First Amended

Complaint at ¶ 26.]  The mere fact that some of the Defendants

discussed a response to Kahle's intended objection is not

sufficient to allege a criminal or unlawful purpose.  The First

Amended Complaint also alleges that

> Agreement was reached with personnel of the Senate
> Sergeant-at-Arms and the Deputy Sheriffs on a plan
> or approach of dealing with Plaintiff Kahle and
> other members of HCSSC, including, but not limited
> to, forcible removal of Plaintiff Kahle from the
> Senate Chambers based upon his exercise of his
> First Amendment rights, and other action (sic)
> against Plaintiffs.
> 183. Defendants and Doe Defendants conspired
> to violate rights of Plaintiffs . . . .

[Id. at ¶¶ 182-83.]  The allegation that Defendants' planned

actions were based on Plaintiffs' exercise of First Amendment

rights and the allegation that there was a conspiracy to violate

Plaintiffs' rights are legal conclusions, and this Court does not

presume the truth of legal conclusions in a motion to dismiss.

See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

At the hearing on the Motion, Plaintiffs' counsel

argued that the First Amended Complaint's allegation that Arakaki

detained Hughes in the Senate Chambers, preventing Hughes from

filming Villaflor, Carabbacan, and others when they assaulted

Kahle in the rotunda is sufficient to allege a criminal or

unlawful purpose.  [First Amended Complaint at ¶¶ 51-54.]  These

allegations, however, merely address concerted action and are not

sufficient to allege a criminal or unlawful purpose.  Thus, the

45

First Amended Complaint fails to plead a plausible claim for civil conspiracy.  It is, however, arguably possible for Plaintiffs to cure the defects in this claim by amendment.  The Court therefore GRANTS the State Defendants' Motion as to Count XVIII insofar as Count XVIII is DISMISSED WITHOUT PREJUDICE, subject to the section of this Order addressing Leave to Amend, *infra*.

> **D.    Negligent Hiring, Training, Supervision & Retention**

Count XII alleges a claim against the State for the negligent hiring, training, supervision, and retention of the individual Defendants responsible for the alleged wrongful acts at issue in this case.  The State Defendants argue that this claim is not actionable because it does not meet the discretionary function exception to the State Tort Claims Act. Haw. Rev. Stat. § 662-15(1) states:

> This chapter shall not apply to:
> (1) Any claim based upon an act or omission of an employee of the State, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation is valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a state officer or employee, whether or not the discretion involved has been abused[.]

The Hawai`i Supreme Court has stated that, in determining whether this exception applies, courts must "determine whether the challenged action involves the effectuation of a `broad public

46

policy', on the one hand, or routine, 'operational level

activity' on the other." <u>Tseu</u>, 88 Hawai`i at 88, 962 P.2d at

347.  To the extent that Count XII is a state law claim over

which this Court has supplemental jurisdiction, this Court

rejects the State Defendants' argument that federal law applies

to this claim.  [Reply at 6.]

        The State Defendants also argue that, even if state law

applies, the discretionary function exception applies to the

portion of Count XII based on the failure to adopt a training

program for Sergeant-at-Arms and Deputy Sheriff personnel.  The

State Defendants rely on <u>Nakahira v. State</u>, 71 Haw. 581, 799 P.2d

959 (1990).  In <u>Nakahira</u>, the Hawai`i Supreme Court held that

> the State's adoption of a program to certify
> non-aviator personnel to conduct "run-ups" of
> helicopters is a discretionary function, but we
> further hold that implementation of the training
> of the non-aviator personnel is not a
> discretionary function under the State Tort
> Liability Act.  The development of the specifics
> for the safety training program of the non-aviator
> do not involve broad policy considerations for
> which the State Tort Liability Act retained
> immunity.

71 Haw. at 585, 799 P.2d at 962.  <u>Nakahira</u> is inapplicable to the

instant case because it did not address the applicability of the

discretionary function exception to the decision to adopt a

program when the program is allegedly necessary to prevent state

employees from violating rights guaranteed by the United States

Constitution.

There are disputed issues of material fact as to this claim because, arguably, if State employees failed to adopt a program that they knew was necessary to prevent the violation of constitutional rights, they were not exercising due care and this Court could not find that they were operating within the exercise or performance of their official functions or duties.  Thus, at this time the Court cannot find that, as a matter of law, the State is entitled to dismissal of Count XII pursuant to the discretionary function exception.  The State Defendants' Motion is DENIED as to Count XII.

E.   **Plaintiffs' Remaining State Claims**

For the reasons set for in this Court's discussion of Plaintiffs' constitutional claims, Plaintiffs' remaining state law claims - Count VII (assault and battery), Count VIII (false arrest/false imprisonment), Count IX (IIED), and Count X (NIED) - also have disputed issues of material fact.  This Court therefore cannot find at this time that, as a matter of law, the State Defendants are entitled to judgment on the pleadings as to those claims.  The State Defendants' Motion is DENIED as to Counts VII, VIII, IX, and X.

III. **Leave to Amend**

This Court has dismissed the following claims without prejudice: the portions of Count I and Count II alleging § 1983 claims based on the violation of Plaintiffs' right to freedom of

assembly; Count XI (malicious prosecution) as to Defendants
Arakaki, Carabbacan, Kwon, Schwartz, Muraki, Naauao, Watts, Reid,
and Ogata, in their official and individual capacities; and Count
XVIII (civil conspiracy).  The Court grants Plaintiffs leave to
submit a motion to the magistrate judge which seeks permission to
file an amended complaint addressing those claims.[7]  Plaintiffs
are not granted leave to add new parties, claims or theories of
liability, and any proposed amended complaint must address the
deficiencies noted in this Order.  Any such motion shall be filed
by no later than **February 10, 2012**.  If Plaintiffs fail to timely
file a motion seeking leave to file an attached amended
complaint, the claims which this Court has dismissed without
prejudice will be automatically dismissed with prejudice.
Further, if the magistrate judge gives Plaintiffs leave to file
the amended complaint addressing those claims, but the amended
complaint does not address the deficiencies identified in this
Order, the claims that the instant Order has dismissed without
prejudice may be dismissed with prejudice.

---

[7] The Court emphasizes that it expresses no opinion as to
the merits of Plaintiffs' Motion for Leave to Amend the Rule 16
Scheduling Order and Motion to Join Additional Party and/or to
Amend the First Amended Complaint, filed December 7, 2011
("Pending Motion to Amend").  [Dkt. no. 122.]  The Pending Motion
to Amend is set for hearing before the magistrate judge on
February 27, 2012.  Further, the Court expresses no opinion as to
whether the amendments proposed in the Pending Motion to Amend
would cure the deficiencies in the First Amended Complaint which
this Court has identified in the instant Order.

## CONCLUSION

On the basis of the foregoing, the joinder by Defendant
Villaflor, in his individual capacity, and the joinder by
Defendant Kwon, in his individual capacity, are HEREBY GRANTED,
and the State Defendants' Motion for Judgment on the Pleadings,
filed September 21, 2011, is HEREBY GRANTED IN PART AND DENIED IN
PART.  The Motion is GRANTED insofar as:

- the portions of Counts I, III, V, XIV, and XVI alleging claims
  for declaratory relief against Defendants Villaflor,
  Arakaki, Carabbacan, Kwon, Schwartz, Muraki, Naauao, Watts,
  Reid, and Ogata, in their official capacities, are DISMISSED
  WITH PREJUDICE;
- the portions of Counts I through VI and Counts XIV through XVII
  asserting claims based on the alleged violations of the
  Hawai`i State Constitution are DISMISSED WITH PREJUDICE;
- the portions of Count XIII alleging Hughes' claim for negligent
  investigation and Kahle's claim for negligent investigation
  based on the physical injuries he allegedly suffered during
  the incident are DISMISSED WITH PREJUDICE;
- the portions of Counts I and II asserting § 1983 claims based on
  the alleged violation of Plaintiffs' right to freedom of
  assembly are DISMISSED WITHOUT PREJUDICE;
- Count XI (malicious prosecution) is DISMISSED WITHOUT PREJUDICE
  as to the State and Defendants, Arakaki, Carabbacan, Kwon,
  Schwartz, Muraki, Naauao, Watts, Reid, and Ogata, in their
  official and individual capacities; and
- Count XVIII is DISMISSED WITHOUT PREJUDICE.

The Motion is DENIED in all other respects.

To the extent that the Court has dismissed some of
Plaintiffs' claims without prejudice, the Court GRANTS Plaintiffs
leave to submit a motion to the magistrate judge seeking
permission to file an amended complaint addressing those claims.
This Court CAUTIONS Plaintiffs that, if they fail to file their
motion by **February 10, 2012**, the claims which this Court has

50

dismissed without prejudice will be automatically dismissed with prejudice.  Further, if Plaintiffs' amended complaint does not address the deficiencies identified in this Order, the claims which this Court has dismissed without prejudice may be dismissed with prejudice.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, January 26, 2012.



_/S/ Leslie E. Kobayashi_____
Leslie E. Kobayashi
United States District Judge

**MITCHELL KAHLE, ET AL. V. BIENVENIDO VILLAFLOR, ET AL; CIVIL NO. 10-00764 LEK-KSC; ORDER GRANTING IN PART AND DENYING IN PART THE STATE DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**